SMITH and others *vs.* DRAKE and others.

1. If an administrator or other trustee, directly or indirectly, purchase lands at a sale made by himself as such, the sale will be set aside on application of the parties really interested.

2. Courts of equity will refuse relief even in cases of breach of trust, on account of the laches or unreasonable delay of those concerned to apply for relief. This doctrine is somewhat in analogy to the statute of limitations at law. But the time which constitutes the laches depends on the circumstances. In this case the suit was commenced seventeen years after the oldest son of the intestate, and five years after the youngest son came of age, and it was under the circumstances held not to be such laches as will bar the relief.

3. Such relief is always granted on equitable terms. The purchaser in this case was allowed the value added to the property by the improvements erected by him and the debts of his intestate, which he had paid out of the money arising from the sale declared void, with interest from the date of each payment, and was charged with the rent or occupation value of the premises from the time of the purchase, less one-third during the life of the widow of the intestate who had conveyed to him her right of dower.

4. The credibility of a witness is not affected by the fact that he is sixty-five years old.

Argued upon final hearing, on bill, answer, and proofs.

*Mr. Kays* and *Mr. R. Hamilton,* for complainants.

*Mr. McCarter,* for defendants.

Smith *v.* Drake.

THE CHANCELLOR.

The complainants are five children of Alexander H. Smith, who died intestate in November, 1843. The defendant, Nathan Drake, was appointed administrator of his estate, and having obtained an order of the Orphans Court of Sussex county for the sale of the real estate of his intestate for payment of debts, in March, 1846, sold the real estate, being a house and lot in Newton, to one Dennis Cochran, at public auction, for $1300. On the 28th of January, 1847, he conveyed this property to Cochran by deed of that date, and on the same day received a deed from Cochran and wife for the same. Both deeds were dated and acknowledged on the same day, and acknowledged before the same master.

Nathan Drake took possession of the property after the sale, put buildings in repair, added to them, and erected new buildings on the lot, and rented them and received the rents.

In 1843, at the death of their father, the oldest of the complainants was sixteen, the youngest four years old. The first was therefore of age in 1848, the last in 1860. The bill was filed in 1865, or five years after the youngest child came of age.

The complainants allege that the sale made nominally to Dennis Cochran was in reality made to Drake himself, for whom Cochran was the agent. They ask to have the sale set aside on equitable terms, and the property conveyed to them.

Drake, in his answer, denies that Cochran purchased for him, or that he was the real purchaser at the sale; and sets up the acquiescence of the complainants, and the time permitted to elapse before filing the bill as a bar to the relief in equity.

The fact that Cochran purchased as the agent of Drake, is shown by the best possible evidence—that of Cochran himself; he testifies positively to it. He is contradicted by no one. The only objections urged to his testimony are his age, and the fact that he does not recollect all the circumstances

and particulars respecting the sale. He is sixty-five years old. No presumption arises against the capacity or credibility of a witness on account of having attained that age. Neither observation nor experience warrants it. Failure of memory or intellect may be shown by proof or his own examination, at that, or any other age. No witness has testified against his capacity, and the want of recollection of all the circumstances in his own testimony is not of the kind to show failure of intellect in any degree. He does not recollect whether the sale was by auction or private sale. If, as he testifies, he had no interest in the transaction, but was requested at a sale held at the inn kept by him, to purchase for Drake, it is not to be wondered at that after a lapse of more than twenty years, he does not recollect whether this one of the many like transactions that may have taken place there was at public or private sale, while at the same time he distinctly recollects receiving and giving a deed for this property without paying or receiving money, and that it was done at the request and as agent of Drake.

The facts appearing on the face of the deeds themselves are sufficient to raise the presumption that the purchase was by Drake. Chancellor Williamson, in *Obert* v. *Obert*, 2 *Stockt.* 103, held that the fact that David Smith, (the nominal purchaser,) was a man of no means, and that on the same day the administrator conveyed the property to Smith, he re-conveyed it to the administrator, is sufficient proof, without any explanation of the transaction, that the purchase was made through Smith for the benefit of Obert. In this case, without Cochran's evidence, the circumstances are sufficient to raise the presumption that the purchase was by Drake. This presumption could be rebutted by proof, but there is no such proof. And as the clear, positive proof of Cochran confirms the presumption arising from the papers, the fact that Cochran purchased for Drake must be considered as established; and upon well settled principles of equity the conveyance must be set aside as against the complainants, unless they are barred by their own laches.

Courts of equity, though not within the statute of limitations, are generally guided by them in administering relief, either by presuming payment of claims, or acquiescence in the matter complained of by laches or unreasonable delay in seeking relief. When a like claim would be barred at law by the time elapsed, courts of equity generally consider the remedy at equity barred, and sometimes consider delay, even for a less time than required at law, such laches as will be a bar in equity; but this depends upon the particular circumstances of each case. And these doctrines are applied to trusts. *Story's Eq. Jur.*, §§ 1520, 1520 *a*, and 1520 *b; Obert* v. *Obert*, 1 *Beas.* 430; *Michoud* v. *Girod*, 4 *How.* 503. No case has been brought to my attention, where a delay no longer than that in this case has been held sufficient to preclude relief.

In *McKnight* v. *Taylor*, 1 *How.* 161, nineteen years; in *Bowman* v. *Wathan, Ib.* 189, eighteen years; and in *Gregory* v. *Gregory, Cooper*, 201, also eighteen years, were respectively held sufficient laches to bar relief.

But in *Obert* v. *Obert*, 2 *Stockt.* 98, in this court, and 1 *Beas.* 423, in the Court of Appeals, there were twenty-two years between the conveyance and filing the bill. The opinion in the Court of Appeals states that the complainant and his sister, owners of two-twentieths, were under age for *several* years after the deed, and that Nancy Conklin, from whom he derived title to four-twentieths about 1837, was protected by coverture. The Chancellor states that Nancy Conklin was of age, but does not mention her coverture, and observes, " but I do not think the statute should be applied;" and both courts say that the bar, by time, depends upon the circumstances of each case.

In cases of fraud it is held, that the time will be computed only from the discovery of the fraud: *Story's Eq. Jur.*, § 1521; and the bill alleges that this fraud was not discovered until about one year before the commencement of the suit. The answer denies this allegation, but as it is not under the oath of the defendant, and is a fact of which the guardian has

no personal knowledge, the denial amounts only to an allegation in pleading. But this made it incumbent on the complainants to prove the allegation if they claim the benefit of the fact; this they have not done.

The case as to the laches must be considered upon the other facts before the court. The suit, though eighteen years and a half after the deed, was commenced seventeen years after the oldest son was of age. The record of the deeds is no presumptive notice of the fact of fraud, even to those of full age, and the defendant, Nathan Drake, was the guardian of the two older children, which fact was calculated to give them confidence in the fairness of his transactions, and to put the best construction on those that would admit of different views. The younger children, who must act with them, did not all come of age until five years before the suit, and the estate not being large, nor the value over the price bid great, it was prudent to wait until all could proceed in one suit. Under these circumstances, the delay or laches in this case are not so great as to bar the remedy.

The complainants ask that the conveyance be set aside on equitable terms. On part of the defendant it is contended that the court should only allow the excess of the value at the time of the sale, above the bid of Cochran, with interest; as was done in the case of *Huston* v. *Cassedy*, 2 *Beas.* 228, and 1 *McCarter* 320. In that case this course must be taken to have been pursued by the Chancellor for the reason that it was with the assent of the complainants, as it was really the most beneficial to them; he states his determination to make the reference in that manner with the reservation, " unless the complainants show cause to the contrary." He states that " the rule is inflexible, that a sale made by an administrator or any other acting in a fiduciary capacity to himself, or for his benefit, will be held void at the instance of the party prejudiced by such sale, and the purchaser regarded in equity as a trustee." And in *Obert* v. *Obert*, 2 *Stockt.* 103, to which he there refers, he said : " It is a matter of right in the complainant, and not of discretion in the court, to have the deed

removed out of his way and set aside." These are perfectly consistent with the course pursued, if assented to by the complainant; but not with refusing to set aside the deed when the complainant insists upon it. In that case it is pretty clear, from the evidence, that the property would not have brought $6000 at that time, and, therefore, the decree, while just against the defendant, was most beneficial to the complainant. The defendant here, as there, has been guilty of a legal or constructive breach of trust, and therefore must be held to strict account; and the option in such case is always with the *cestui que trust*.

But the decree must be made on equitable terms. The defendant paid debts of his intestate to the amount of the sum bid for the property. He must be allowed that sum with interest from the times when he paid it out, which, for the purpose of this case, must be assumed to be the date of the delivery of the deed. His final account was no doubt adjusted on that basis.

He also expended moneys in the improvement of the premises. He must be allowed the additional value which such improvements at the present time give to the premises, above what their value would have been now if these improvements had not been made. He is not to be allowed the cost of such improvements; they may have been unwisely made, or their value have perished or depreciated by decay. But such allowance must not, in any case, exceed the cost of these improvements, for the defendant must make no profit out of them.

He must account for all rents and profits received from the premises, or that might have been received by prudent management and ordinary diligence, including a fair and full occupation rent for the same when occupied by him or his family; and is to be credited for taxes actually paid, and all ordinary and usual repairs.

Harriet Smith, the widow of the intestate, was entitled to dower in the premises. On the 2d day of April, 1850, she conveyed this right to Drake. From that time until her

death, Drake, by this deed, was entitled to one-third of the income, and therefore, during that period, must be charged with only two-thirds of the net value or income of the property.

If the occupation rent, and rents received from the property as improved, exceed the rents that could have been received from it as it was at the sale, kept in good repair, any excess in the actual cost of improvements above their present value to the property may be deducted from such excess of rents, and the defendant be charged with the balance only; as it is equitable that expenditures which gave additional temporary value to the premises should be repaid out of the additional income actually received by means of them.

Upon payment of the amount found due on these principles to the legal representatives of Nathan Drake, who is now dead, the conveyance to him will be declared void.